# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JANET FREEMAN,

       **Plaintiff,**

                                     **Civil Action 2:17-cv-764**
                                     **Chief Judge Edmund A. Sargus, Jr.**
    **v.**                               **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

       **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Janet Freeman ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits.   This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Response in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 7).   For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.  BACKGROUND

Plaintiff protectively filed her application for a Period of Disability and Disability Insurance Benefits on September 14, 2012.   In her application, Plaintiff alleged a disability onset of February 14, 2012.   Plaintiff's application was denied initially on December 11, 2012, and

upon reconsideration on April 1, 2013. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Thomas Wang ("ALJ") held a hearing on June 18, 2014, at which Plaintiff, represented by counsel, appeared and testified. Thomas Nimberger, a vocational expert, also appeared and testified at the hearing. On July 17, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On December 23, 2015, the Appeals Council granted Plaintiff's request for review. The Appeals Council then remanded the case to the ALJ for further proceedings, ordering him to obtain additional evidence concerning all of claimant's impairments in order to complete the administrative record, give further consideration to claimant's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert.

On April 29, 2016, the ALJ held a second hearing, at which Plaintiff, represented by counsel, appeared and testified. Plaintiff amended her alleged onset date to September 3, 2013. On June 24, 2016, the ALJ issued a second decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On July 3, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises a single issue: that the ALJ violated the treating physician rule. Specifically, Plaintiff asserts that the ALJ erred in his consideration and weighing of the opinion of Plaintiff's treating physician, Dr. Shelby Raiser, D.O. According to Plaintiff, the ALJ failed to properly apply the controlling weight test and failed to offer good reasons for only giving "some weight" to Dr. Raiser's opinions. In Plaintiff's view, Dr. Raiser's opinions support her application for disability. Plaintiff emphasizes that in the ALJ's first decision, he

gave great weight to Dr. Raiser's opinions, whereas in the second decision, he gave the opinions only some weight.

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

At the first administrative hearing, Plaintiff testified that she is divorced and that her oldest son, Brandon, 18, lives with her.   (R. at 139.)   When the ALJ asked Plaintiff why she was alleging her disability onset date as of February 14, 2012, Plaintiff testified that on that date, she was working, and upon her return from lunch, she had difficulty standing, talking, and breathing, at which time her supervisor called 911.   (R. at 138-39.)   When asked by the ALJ what she does during the day, Plaintiff indicated she "mostly lay[s] around."   (*Id.*)   She also stated that she is on a significant number of medications and that she suffers near-daily bouts of diarrhea and vomiting, as well as occasional fainting.   (R. at 142, 148.)   When questioned by her attorney, Plaintiff indicated that she "barely" does house work or chores or goes to the grocery store and that she only cooks using a microwave.   (R. at 150, 154.)   She further testified that her pain causes spasms while driving, difficulty sleeping, and difficulty sitting or standing.   (R. at 153.)

At the April 29, 2016 administrative hearing, Plaintiff testified that she believed her doctor limited her to lifting and carrying only 5-pounds, but that she goes to 10-pounds because she is unsure if the limit was outdated.   (R. at 79.)   She testified further that she can only bend or stoop "once or twice a week at the most" due to significant pain lasting for days afterward.   (R. at 80.) Plaintiff again testified that she spends most of her time simply lying around, but added that she also uses a heating pad when lying down.   (R. at 82.)   On examination by her attorney, Plaintiff described her training and regular duties as a bank teller for PNC. (R. at 82-99.)   Plaintiff also

described her duties as a cashier for TC Market.   (R. at 99-100.)   Plaintiff's attorney then asked

whether she had any improvement in her condition since the previous hearing, which she indicated

she had not.   (R. at 100.)   Plaintiff added that back surgery was recommended as the only option

to relieve her pain, but that her cardiologist did not want her to go through surgery.   (R. at

100-101.)

## B.     Vocational Expert Testimony

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past

jobs include bank teller and cashier checker.   (R. at 103.)   The VE then testified that a

hypothetical individual of Plaintiff's age, education, and vocational profile who retained the

residual functional capacity ("RFC")[1] that the ALJ ultimately assessed could not perform

Plaintiff's past work.   (R. at 105.)   The VE testified that the hypothetical individual could,

however, perform approximately 184,400 light, unskilled jobs in the national economy

(approximately 7,025 jobs locally) such as garment tacking machine tender, storage facility rental

clerk, and label coder.   (R. at 105-06.)   The VE further opined that the work experience of the

hypothetical individual imparted transferrable skills.   In response to questioning by Plaintiff's

counsel, the VE testified that if Plaintiff were to miss more than two-days of work per month, she

could not sustain competitive employment.   (*Id.*)

---

1.   A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations."
20 C.F.R. § 404.1545(a)(1).

### III. RELEVANT MEDICAL RECORDS[2]

**A.    Shelby Raiser, D.O.**

On October 9, 2012, Dr. Raiser provided a medical opinion regarding Plaintiff's physical abilities upon request by the Social Security Adjudicator.   In her opinion, Dr. Raiser stated that "due to back pt unable to do physical activity. Especially stoop, bend, walk, stand for prolonged period of times."   (R. at 442.)   Dr. Raiser also noted in her opinion that Plaintiff needed further evaluation of her back by a neurosurgeon.   (*Id.*)

On January 21, 2013, Dr. Raiser provided a second medical opinion regarding Plaintiff's physical abilities upon request by the Social Security Adjudicator.   In her opinion, Dr. Raiser stated:

> Pt has functional capacity for sedentary activities as follows.   She must relieve position break every hour from a seated or standing position for 5-10 mins with walking and standing limited to 102 hours in a day but not consecutive.   Lifting carrying pulling limited to 20 lbs on <u>occasion</u>.   No squatting, bending, stooping, kneeling no upper extrem restriction.   These may be re-reviewed after eval with neurosurgeon.

(R. at 493.)

Plaintiff visited Dr. Raiser for a routine checkup on May 30, 2014.   At that time, she stated that her back hurt constantly.   (R. at 530.)   Dr. Raiser noted that Plaintiff's forearms were bruised.   (*Id.*)   When questioned about the bruises, Plaintiff told Dr. Raiser that she has been helping her son "do something on the boat."   (*Id.*)   Although Plaintiff complained of back pain, physical exam testing revealed normal results, including a normal gait and range of motion.   (R. at

---

2.   Plaintiff's sole contention of error is that the ALJ erred in weighing the opinions of her treating physician, Dr. Raiser.   Dr. Raiser's opinions include only brief references to psychiatric impairments, focusing instead on limitations attributable to Plaintiff's back pain.   The undersigned therefore focuses the discussion on records relevant to Plaintiff's alleged back pain symptoms and limitations.

531.)

On September 9, 2014, Plaintiff saw Dr. Raiser for follow-up testing, during which she indicated that she was then smoking about 10 cigarettes per day.   (R. at 676.)   Dr. Raiser performed a physical exam with normal results.   Importantly, Dr. Raiser noted a normal gait and no spinal abnormalities, symmetric and intact strength and sensation throughout, and +2 reflexes throughout.   (R. at 677.)

Plaintiff returned to Dr. Raiser on January 13th and 29th of 2015.    Physical exam testing during the January 13th visit again yielded normal results.   (R. at 680.)   Physical exam testing during the January 29th visit yielded identical results.   (R. at 685.)   Dr. Raiser noted, however, that Plaintiff then had 10% clogging in one heart vessel and 30% in another.   (R. at 683.) Plaintiff's reported smoking remained unchanged.   (R. at 679.)

Plaintiff visited Dr. Raiser's office on March 26, 2015, indicating that her pain had worsened and that her neurosurgeon, Dr. Uselman, was no longer available.   (R. at 751.)   Dr. Raiser referred Plaintiff to neurosurgeons Drs. Mullins and Lobel on April 15, 2015.   (R. at 752.) Dr. Mullins refused to schedule Plaintiff due to a past due balance.   (*Id.*)   Dr. Lobel was available for consultation, and his office was willing to accept Plaintiff's insurance.   (*Id.*)   Dr. Lobel's office made repeated attempts to reach Plaintiff in order to schedule an appointment, including phone calls and a scheduling letter, but Plaintiff did not respond.   (*Id.*)   After the third attempt to leave a voice message requesting that Plaintiff schedule an appointment, Dr. Lobel's office declined to make any further attempts to reach her.   (*Id.*)

Records from the Thornville Family Medical Center indicate that Plaintiff missed several appointments with Dr. Raiser in 2015.   Specifically, Plaintiff cancelled an appointment on

February 25, 2015 (R. at 746 ("Pt stated something came up . . . .")); missed an appointment on March 18, 2015, (R. at 747); and cancelled her appointment on June 30, 2015, (R. at 756). Moreover, on March 16, 2016, Plaintiff was advised by Dr. Raiser that her prescriptions could not be refilled because Dr. Raiser had last seen her seven months prior.   (R. at 769.)

On August 4, 2015, Plaintiff again visited Dr. Raiser's office.   Dr. Raiser noted that although Plaintiff continued to have fatigue and pain, "overall she has been ok."   (R. at 763.)   Dr. Raiser performed a physical exam, which revealed only normal results, including normal gait, range of motion, and strength throughout.   (R. at 760-61.)

Plaintiff last visited Dr. Raiser's office on March 22, 2016.   At that visit, Dr. Raiser noted that "overall [Plaintiff] is doing ok . . . .   She continues with pain on a daily basis. [I]f she sits too long, if she walks too long, if she stands too long."   (R. at 770)   Plaintiff continued to report smoking approximately 10 cigarettes per day.   (*Id.*)   Dr. Raiser performed a physical exam, which reflected only normal results, including normal gait, range of motion, and strength throughout.   (R. at 771-72.)

**B.      James Uselman, M.D.**

In August 2012, Plaintiff saw Dr. Uselman for a neurological consultation regarding her lower back pain.   Dr. Uselman performed a physical examination and noted normal gait, 5/5 strength in all upper and lower extremities, +2 reflexes in all extremities, and a positive straight leg raise.   (R. at 431.)   After performing the exam, Dr. Uselman prescribed physical therapy and indicated if that was unsuccessful, he would like to order imaging.   (R. at 428.)

In March 2013, Plaintiff returned to Dr. Uselman for evaluation of a lumbar myelogram and post myelographic CT scan.   Dr. Uselman observed that the testing showed no significant

nerve root compression and that the biggest concern was that Plaintiff's intervertebral disc at the L5-S1 level was collapsed.   (R. at 452.)   Although the images reflected some abnormalities, Dr. Uselman did not "have a great explanation for why [Plaintiff's] legs are bothering her."   (*Id.*) Dr. Uselman discussed the possibility of back surgery, but conceded that he could not guarantee that surgery would alleviate Plaintiff's symptoms.   (*Id.*)   Dr. Uselman ordered EMGs and an abominopelvic CT to confirm there were no additional abnormalities causing Plaintiff's symptoms.   In September 2013, Dr. Uselman reviewed the results of Plaintiff's EMG and abdominal CT and determined that the CT was "fairly benign" and that the EMGs were negative. (R. at 588.)   Dr. Uselman again discussed the possibility of back surgery and advised that there was a 50/50 chance surgery would alleviate her pain.   (*Id.*)

C.     **State Agency Evaluations**

On October 29, 2012, state agency physician, Lynne Torello, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity.   (R. at 169-82.)   Dr. Torello opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in a workday; and sit for about six hours in a workday.   (R. at 176-77.)   According to Dr. Torello, Plaintiff could balance without limit; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl.   (R. at 177.)   Although Dr. Torello found Plaintiff to be fully credible, she concluded that Plaintiff has "good enough strength and movement to sit, stand, walk, and move around to complete some type of work."   (R. at 176, 182.)

Jan Gorniak, D.O., reviewed the record upon reconsideration on March 30, 2013, and opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently;

stand and/or walk for four hours in a workday; and sit for about six hours in a workday. (R. at 193.) She agreed with and affirmed the remainder of Dr. Torello's assessment. (*Id.*)

Drs. Torello and Gorniak both found that Dr. Raiser's opinion was "partially consistent with the MER findings because it indicates the claimant is unable to do physical activities," although the MER "findings indicates that she is able to do some physical activities on a restricted basis." (R. at 176, 192.)

## IV.    THE ADMINISTRATIVE DECISION

On June 24, 2016, the ALJ issued his decision. (R. at 49-68.) The AJL first found that Plaintiff meets the insured status requirements through December 31, 2017. At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 3, 2013, the amended alleged onset date. (R. at 16.) The ALJ found

---

3. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with lumbar stenosis, tachycardia, anxiety, and major depressive disorder. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that [Plaintiff] has the residual functional capacity to lift and/ or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk four hours out of an eight hour day; sit six hours out of an eight hour day; occasionally push or pull; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; no use of hazardous machinery and no exposure to unprotected heights; work in a low stress job defined as only occasional changes in the work setting; work allowed to be off task for 5 percent of the workday.

(R. at 18.) In reaching this determination, the ALJ followed a two-step process. First, the ALJ found that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 19.) Second, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

In calculating Plaintiff's RFC, the ALJ relied upon the opinions of Drs. Raiser, Torello, and Gorniak. The ALJ gave some weight to Dr. Torello's opinion and more weight to Dr. Gorniak's opinion on reconsideration. (R. at 61.) However, the ALJ "found the claimant slightly more limited physically then determined by the State agency medical consultant on reconsideration based on the objective findings on exam and imaging." (*Id.*) The ALJ also gave some weight to Dr. Raiser's opinions, which placed significant limitations on Plaintiff's physical abilities. (*Id.*)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy.   (R. at 73-74.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act.   (R. at 74.)

## V.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ improperly weighted the opinions of Dr. Shelby Raiser in violation of the treating physician rule.    Within this contention of error, Plaintiff argues that (1) the ALJ should have given *res judicata* effect to the weight he assigned to Dr. Raiser's opinions in the first decision, and (2) the weight assigned to Dr. Raiser's opinions in the second decision is not supported by substantial evidence.    The undersigned considers each of these arguments in turn.

### A.    *Res Judicata*

As a threshold matter, the Court must determine whether the ALJ's first decision should be given any *res judicata* effect.    As Plaintiff indicates, the ALJ gave great weight to Dr. Raiser's opinions in his first decision, whereas he gave them only some weight in the second decision. Plaintiff maintains that the ALJ erred by failing to address the difference in weight between the two decisions.    Although not cited by Plaintiff, the Sixth Circuit held in *Drummond v Comm'r of Soc. Sec'y*, 136 F.3d 837, 842 (6th Cir. 1997), that *res judicata* applies to final decisions by the Commissioner, absent changed circumstances.    Clarifying the rule in *Drummond*, the Sixth Circuit later held:

> *Drummond* addressed the question of when a claimant has filed two different applications and the ALJ's decision on the first application has become final. The

12

> court held in Drummond that absent evidence of an improvement in a claimant's
> condition, a subsequent ALJ is bound by the findings of a previous ALJ. *Id*. at
> 842. Thus, an ALJ addressing a claimant's subsequent application is bound by the
> findings of a prior final decision. In this case, ALJ Cogan's findings did not involve
> a different application nor a "final" decision.

*Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003).   Since *Wireman*, courts in

the Sixth Circuit have consistently held that an ALJ is not bound by a prior decision that was

vacated pursuant to remand.   *See Perkins v. Comm'r of Soc. Sec.*, No. 1:13-cv-102, 2014 WL

619393, at *6 (S.D. Ohio Feb. 18, 2014) (collecting cases).   In this case, the ALJ's first decision

never became final because it was vacated and remanded by the Appeals Council.   Accordingly,

*Wireman*, not *Drummond*, controls.   Accordingly, the undersigned finds that *res judicata* cannot

apply here such that only second decision is properly before this Court for review.

## B.  The Treating Physician Rule

The ALJ must consider all medical opinions that he or she receives in evaluating a

claimant's case.   20 C.F.R. § 416.927(c).   The applicable regulations define medical opinions as

"statements from acceptable medical sources that reflect judgments about the nature and severity

of your impairment(s), including your symptoms, diagnosis and prognosis."   20 C.F.R. §

416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources

are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical filings alone . . ."   20 C.F.R. § 416.927(c)(2);

*Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 408 (6th Cir. 2009).   If the treating physician's

opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). The Court next turns to Plaintiff's contention that the ALJ violated the treating physician rule.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when

14

the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned some weight to Dr. Raiser's opinions as Plaintiff's treating physician and assigned more weight to the opinion of State Agency Physician Gorniak on reconsideration. Although Plaintiff maintains that the ALJ failed to give good reasons for the weights assigned, the ALJ provided a lengthy discussion of how he arrived at his determinations. In discussing Dr. Raiser's opinions, the ALJ stated as follows:

> I give only some weight to the opinions of Dr. Raiser[] . . . as the objective evidence of record does not support limitations suggested beyond those in the claimant's residual functional capacity and some of the limitations suggested in these opinions are unsupported by the objective findings in the doctor's own treatment records. The more recent records reveal treatment with large gaps and compliance issues with the claimant failing to attend appointments as advised. She also failed to pursue the recommended neurosurgeon consult and failed to respond to four attempts of contact by a neurosurgeon who accepted her insurance. Findings on objective exam have been mild to essentially normal, even at the most recent exams, and do not support her subjective complaints. While the earlier opinions

noted some positive findings on exam while awaiting an initial neurosurgeon consult, the claimant did not have such findings on later examinations and apparently improved with treatment based on normal objective findings on examinations.

*     *     *

As noted, the claimant has failed to attend appointments with Dr. Raiser as instructed, but continued to ask Dr. Raiser to complete paperwork with regard to claimant's continuing this party insurer benefits. Findings on exam however were essentially normal and not supportive of limitations suggested in these statements. For example, on August 5, 2015, Dr. Raiser completed a disability form for the claimant's third party insurer, citing claimant's cardiac condition as the reason the claimant is unable to return to work. Dr. Raiser wrote that the claimant's neurosurgeon discussed surgery but wanted cardiac issues stable first. However, the claimant's lack of continued treatment with neurosurgery has been discussed above with claimant's lack of follow-up and generally stable findings on cardiac follow-up. The claimant's primary care physician completed another similar continuation of disability form for the claimant's this party insurer on March 25, 2016. The doctor wrote that the claimant was limited from physical labor due to her cardiac condition and do due [sic] spinal stenosis "cannot bent/sit/stand/walk for prolong periods." These limitations reflect the claimant's subjective reports unsupported by the claimant's normal physical findings on exams by this doctor. It does point out, however, that the doctor was limiting bending, sitting, standing, and walking *for prolonged periods*. Thus, the record as a while, including the treating primary care physician's opinions, support the claimant's ability to engage in occasional climbing of ramps or stairs and occasional balancing, stooping, kneeling, crouching or crawling. The doctor's opinion considered as a while and in comparison with the claimant's treatment notes from this physician do not support a preclusion to these postural activities including stooping. . . .

(R. at 22-23.)

The Court finds no error with the ALJ's consideration and weighing of Dr. Raiser's opinions. The ALJ articulated the weight he afforded Dr. Raiser's opinions and properly declined to accord the opinions controlling weight on the grounds that they were inconsistent with other substantial evidence in the record, including examination findings, there were substantial gaps in treatment, and Plaintiff failed to comply with treatment recommendations. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as a

16

relevant consideration); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'").

First, the ALJ reasonably discounted Dr. Raiser's opinions due to the inconsistencies he identified and the absence of support in the record for the opined limitations. Although Plaintiff argues that Dr. Raiser's opinions are consistent with the record as a whole, she bases much of her argument on (1) the ALJ's first decision, and (2) the ALJ's purported error in reading limitations into Dr. Raiser's opinions. As discussed above, only the final decision is before this Court. Therefore, Plaintiff's reliance on the ALJ's findings in the vacated decision is misplaced. Moreover, the ALJ was within his authority to determine that Dr. Raiser's opinions were limited in scope and duration, pending consultation with a neurosurgeon.

As in weighing a treating physician's opinion, the ALJ must give good reasons for reading a limitation into the treating physician's opinion itself. *Cf. Coldiron v. Comm'r Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (noting that an ALJ "may discredit that opinion, so long as he communicates a reasoned basis for doing so" (citations omitted)). Indeed, finding limitations in an opinion may well be a form of weighing, or discrediting, that opinion. Here, the ALJ properly noted that Dr. Raiser's 2012 opinion limited Plaintiff's ability to stoop, bend, walk, or stand "for prolonged periods of times." (R. at 62. *See also* R. at 141.) Moreover, the ALJ noted that Dr. Raiser's 2013 opinion included the caveat that the opinion "may be re-reviewed after eval with neurosurgeon." (R. at 62. *See also* R. at 493.) In determining that this caveat limited the opinion, the ALJ did not rely simply on the language. Rather, he pointed to Exhibit 8F, where

"Dr. Raiser opines that although the claimant has 'tight lumbar muscles,' that range of motion of the lumbar spine was only mildly dec[r]eased."   (R. at 62.)   The ALJ therefore concluded that the limitations were included "out of an abundance of caution" pending review by a neurosurgeon. (*Id.*)   That both opinions contain such a limiting proviso substantially supports the ALJ's determination that both opinions were made out of an abundance of caution, pending review by a specialist.   Moreover, although not cited by the ALJ, the Court notes that Plaintiff herself indicated that she did not know if the limitations from Dr. Raiser's opinions still applied.   (R. 79 (stating that Plaintiff believed Dr. Raiser had her limited to lifting or 5-10 pounds, but conceding that she goes to 10 because she believes that limit was from the past).)   The Court therefore finds that the ALJ provided good reasons for his conclusion.

Second, in weighing Dr. Raiser's opinions, The ALJ pointed to gaps in Plaintiff's treatment and her failure to comply with doctors' recommendations.   Failure to comply with treatment recommendations and substantial gaps in treatment constitute good reason discredit the treating physician's opinions.   *See Richendollar v. Colvin*, No. 1:13-cv-495, 2014 WL 4910477, at *5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow treatment can indicate that he is not as disabled as alleged.") (citing *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986)); *Tate v. Comm'r of Soc. Sec'y*, 467 F. App'x 431, 433 (6th Cir. 2012) (holding that substantial evidence supported ALJ's weighing of treating physician's opinion where there were substantial gaps in treatment).   Here, the record supports the ALJ's findings.   The record indicates that Plaintiff missed several appointments with Dr. Raiser in 2015 without compelling reason; failed to continue her physical therapy without explanation, (R. at 434 (discharging Plaintiff from treatment due to expiration of care plan, as "Pt did not return for further treatment"); and had up to a seven-month

gap between visits with Dr. Raiser, to the point where Dr. Raiser could not refill Plaintiff's prescriptions due to the time lapse. Moreover, Plaintiff failed to follow Dr. Raiser's recommendations and orders by failing to undergo a colonoscopy for GI bleeding, (R. at 748); failing to see Dr. Lobel for consultation with a neurosurgeon, (R. at 752); continuing smoking (*See, e.g.*, R. at 770); and failing to complete physical therapy, (R. at 434). The undersigned finds that Plaintiff's failure to comply with treatment recommendations and the substantial gaps in treatment constitute good reasons to discredit Dr. Raiser's opinions.

Finally, the ALJ determined that Dr. Raiser's opinions are not supported by objective exam findings and are inconsistent with her own treatment records. As the ALJ correctly notes, early physical exams showed some positive findings related to Plaintiff's back pain. (*See, e.g.*, R. at 431 (noting positive straight leg raise).) However, the record also reflects, as the ALJ discussed, that later objective exam results are mild to substantially normal, including results of physical exams by Dr. Raiser. Indeed, as discussed *supra*, in every physical examination performed by Dr. Raiser, results were normal. Moreover, the *only* time Dr. Raiser indicated tightness in Plaintiff's lumbar muscles or decreased range of motion was in her 2013 opinion. In addition, the results of physical examinations by Dr. Uselman were largely normal. Although results of imaging show some abnormalities in Plaintiff's lumbar spine, the images do not negate the remaining objective medical evidence adduced during physical examinations as recent as 2016. Review of these records reveal that Plaintiff's pain and difficulty walking, standing, and sitting were largely self-reported. The undersigned therefore finds that the ALJ not only provided good reasons for assigning only some weight to Dr. Raiser's opinions, but that his assessment is supported by substantial evidence in the record.

Finally, Plaintiff's assertion that the ALJ erred in performing the controlling weight test by beginning his discussion of medical opinions with the state agency physician's opinions rather than the treating physicians' opinions lacks merit. Plaintiff maintains that this structural deficiency results in the ALJ overruling the treating physician's opinion "before even noting its existence." (Statement of Errors 10, ECF No. 10.) Plaintiff does not cite any case law to support her argument that the mere structure of the ALJ's decision can violate the treating physician rule. Likewise, the undersigned's research has not revealed any authority supporting Plaintiff's position. In the absence of controlling precedent to the contrary, the undersigned finds that the ALJ is not bound to a sequential order of analysis in evaluating the opinions of treating physicians.

In sum, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in his assessment of Dr. Raiser's opinions. It is therefore **RECOMMENDED** that Plaintiff's sole contention of error be **OVERRULED**.

## VII.      DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.      PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those

portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


    /s/ *Chelsey M. Vascura*       
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE